UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| JAY MARSH, | No. C 11-03734 LB |
| Plaintiff, | ORDER REMANDING CASE TO THE AAO, GRANTING LEAVE TO AMEND, AND DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT WITHOUT PREJUDICE |
| v. | |
| JANET NAPOLITANO, Secretary, Department of Homeland Security | |
| Defendant. | ECF Nos. 20, 31, and 46 |
| _____/ | |

## I.  INTRODUCTION

Plaintiff Jay Marsh, a United States citizen, sued the Department of Homeland Security (DHS) because it did not issue a visa or a waiver to his wife, Shiho Takeda, to permit her to enter the United States.  *See* Amended Complaint ("Complaint"), ECF No. 10[1].  The basis for the denial was Takeda's 1995 conviction for marijuana possession in her native Japan.  Marsh argues that her conviction was expunged and invalid and, alternatively, that it was for 30 grams or less, qualifying her for a waiver under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h).  Marsh alleges that DHS's decisions – and the delays in reaching its decisions and its denial of his appeal to the Administrative Appeals Office (AAO) as untimely – violate the INA, the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.*, and his rights to freedom of association, marriage,

---

[1]  Citations are to the clerk's electronic case file ("ECF") with pin cites to the electronically-generated page numbers at the top of the page.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  due process and equal protection under the First, Fifth, and Fourteenth Amendments to the U.S.

2  Constitution. *See* Complaint, ECF No. 10 at 10-16. Marsh seeks declaratory and injunctive relief

3  requiring DHS to adjudicate Takeda's case, issue her a visa, permit her to enter the United States,

4  and grant her citizenship upon arrival. *Id.* at 15-16. He also seeks fees and costs. *Id.* He moved for

5  summary judgment on all of his causes of action. *See* Plaintiff's Memorandum in Support of

6  Summary Judgment Motion ("Summ. J. Mot."), ECF No. 20, ¶¶ 1-5.

7        DHS opposed Marsh's motion and cross-moved for summary judgment, arguing that the State

8  Department (not DHS) was responsible for denying a visa, the State Department's decision is not

9  subject to judicial review under 8 U.S.C. § 1104(a)), and its decision was right. As to DHS's

10  decision not to grant a waiver, it argues that its denial of a waiver is not subject to judicial review

11  under 8 U.S.C. § 1182(h) and in any event was well-founded and not arbitrary and capricious under

12  the APA. Defendant's Opposition and Cross-Motion for Summary .Judgment ("Opp'n"), ECF No.

13  31at 2.

14        Marsh also moved to amend his complaint to add the State Department. ECF No. 46. DHS

15  opposes that amendment as futile (given its position that the decision to deny a visa is not subject to

16  judicial review). ECF No. 50.

17        The court held a hearing on September 6, 2012. For the reasons stated below, the court stays the

18  action for 60 days and remands to the AAO to consider Marsha's challenges to the conviction and

19  amount of marijuana amount on the merits. Because the administrative record following remand

20  will be different, the court denies the parties' cross-motions for summary judgment without

21  prejudice. The court grants Marsh leave to amend to add the State Department as a party.

## II.  BACKGROUND

23        Plaintiff Jay Marsh is a U.S. citizen and a California resident. *See* Joint Statement of Undisputed

24  Facts ("Joint Statement"), ECF No. 43 at 2; Compl., ECF No. 10, ¶ 4. His wife Shiho Takeda[2] is a

25  Japanese citizen. Joint Statement, ECF No. 43 at 2. Marsh and Takeda met in 1992 when Takeda

---

27        [2] In publicly-filed documents, the Government refers to Takeda as S.T to protect her privacy

28  as a non-party. *See* 5 U.S.C. § 552a; Def.'s Mem. of P. & A, ECF No. 32 at 9 n.2; *but see* Answer, ECF No. 14 at 2, 5-6. Because Marsh has filed numerous documents identifying S.T. publicly as Takeda, the court refers to her by name. *See, e.g.,* Complaint, ECF No. 10 (*passim*).

1   was an exchange student in the high school that Marsh also attended.  Complaint, ECF No. 10, ¶ 5.

2   After Takeda returned to Japan, they kept in contact through letters and calls.  Id. ¶¶ 7-11.

3   **A.   Takeda's Conviction for Cannabis Possession**

4       In 1995, when she was 20 years old and living in Japan, Takeda was charged with marijuana

5   possession.  *See*  CAR 224-30[3].  The English-language translation of the indictment says that Takeda

6   and another defendant "colluding with" a third person "bought approximately 36 grams of cannabis

7   with 175,000 yen [around $1,380] . . . around 10 p.m. on June 21, 1995.  CAR 226, 706-07.  The

8   relevant lines of the English translation of the judgment are as follows:

9       Date of Pronouncing Judgment:           October 5, 1995

10      Court:                                  Criminal Division 1, Hiroshima District Court

11      Judge:                                  Masato Saito

12      Public Prosecutor:                      Hajime Harashima

13      Nature of a Crime:                      Violation of Cannabis Control Law

14      Defendant:

15          Name:                               Shiho Takeda

16      [This omitted biographical information such as Takeda's age, address, occupation.  It does

17      not reflect the presence of a defense  attorney.]

18                          *           *           *           *

19   Main Text:

20      The defendant is sentenced to one year's imprisonment.

21      The execution of said punishment shall be suspended for three years from the day this

22      judgment becomes final.

23      Two packs of cannabis (1 and 2 of Seizure No. 76, 1995), cannabis with ash (3 of the same)

24      and cannabis (4 of the same) under seizure shall be forfeited.

25   Summary of Facts Constituting the Offense

26      I quote the Facts Constituting the Offense charged as they are written in the Indictment.

27

28

---

[3] "CAR" is the certified administrative record that was filed under seal.

CAR 224.  The judgment concludes by citing the applicable law:   Japan's Penal Code and Cannabis

Control Law.  *See* CAR 224-25 (citing Penal Code art. 60[4] and art. 25, § 1[5] and  Cannabis Control

Law, art. 24-2(1)[6] and art. 24-5(1)[7]).

These records do not contain any findings about the specific quantity of marijuana other than

what the Indictment charged.  There is no lab report.  There is no admission by Takeda.  There is no

finding as to the specific amount attributed by the judge to Takeda.  The laws cited in the judgment

do not define an amount necessary to convict someone of possession.  *See*  CAR 10-11, 17, 20, 224-

25.  The judgment reflects only the judge's "quoting the facts" from the indictment.

The parties' statement of undisputed facts contain the following additional information about the

conviction.  *See* ECF No. 43 at 2-4.

| | Undisputed Fact | Support |
|---|---|---|
| 7. | Question 31 of S.T.'s  [Takeda's] Form DS-230 [Application for Immigrant Visa and Alien Registration filed on Nov. 20, 2007] states: "Have you ever been charged, arrested or convicted of any offense or crime?"  In response, S.T. marked "yes."  Below that, S.T. wrote "see attachment." | CAR 184 |

---

[4] "Two or more persons who commit a crime in joint action are all principals."  CAR 20 (translation).

[5] "When any one of the following persons has been sentenced to imprisonment with or without work for not more than 3 years or a fine of not more than 500,000 yen, execution of the sentence may, in light of circumstances, be suspended for a period of not less than 1 year but not more than 5 years from the day on which the sentence becomes final and binding:  (i) A person not previously sentenced to imprisonment without work or a greater punishment; (ii) A person who, although previously sentenced to imprisonment without work or a greater punishment, has not subsequently been sentenced to imprisonment without work or a greater punishment within five years from the day on which execution of the former punishment was completed or remitted."  CAR 17, 410-11 (translation).

[6] "Any person who unlawfully possesses, receives, or transfers, or cannabis shall be liable to penal servitude not exceeding 5 years."  CAR 10, 407.

[7] "Cannabis possessed or owned by a criminal under the offenses prescribed in Articles 24 through the preceding article shall be liable to confiscation.  However, in case it belongs to any other person than the criminal, it may not be confiscated."  CAR 11.

UNITED STATES DISTRICT COURT
For the Northern District of California

| 8. | In the referenced attachment, S.T. stated that: "In October 1995 I was convicted of a crime in the Court of Japan . . . and that criminal record has been expunged so that a recent inquiry of the Court records reflects that my slate is clean, and no crime has been committed by me . . . . The crime was for possession with two others, of approximately 36 grams of marijuana, and I did plead guilty, but I fully explained to the Court that although I had agreed to purchase for use only 5 grams, along with two other people (one purchasing 5, and one purchasing the balance) I paid only the amount due for 5 grams. | CAR 185 |
| 9. | On January 28, 2008, S.T. attended an interview related to her DS 230 Application for Immigrant Visa and Alien Registration with the United States State Department at the United States Embassy in Tokyo, Japan. | CAR 114, 121-123 |
| 10. | According to the consular officer, "[d]uring the visa interview, S.T. admitted that she was convicted in October 1995 in Hiroshima, Japan for a crime involving controlled substances violation. A court record was furnished. | CAR 114 |
| | [omitted undisputed facts 11 to 25] | |
| 26. | On January 26, 2008, an Issuing Officer of the Japanese Police issued a certificate which says: "This certificate, which has been issued by the appropriate police authorities, certifies that the person mentioned therein has no previous criminal records in Japan as of the date of its issue." | CAR 230. [Footnoted with footnote 2, which says "Defendant notes that there is no evidence in the record to indicate whether this is an accurate, true, or complete translation of this document."] |
| 27. | In 2001, Department of State found S.T. ineligible for an F-1 non-immigrant, student visa on account of her "conviction in 1995 for violation of the controlled substances Act. [S.T.] and her friends bought 36 grams of Marijuana with 175,000 Yen (about $1,380 U.S. Dollars) for that.  She was sentenced to one year in prison which was suspended to three years on probation.  S.T., however, sought and received a waiver under 8 U.S.C. § 1182(d)(3)(A).  She was then admitted to the United States on August 15, 2001. | CAR 706-709, 705 |

The CAR includes documents that Takeda submitted as part of her effort to gain admission to the United States.  *See, e.g.*, CAR 143-146, 185, 215-16.  Takeda admits that she is guilty of attempting to purchase marijuana in June of 1995.  CAR 143.  She explains that she accompanied a friend to meet a drug dealer.  *Id.*  Takeda's friend tried to purchase 36 grams of marijuana, five grams of which was to go to Takeda.  *Id.*  When Takeda's friend received less marijuana than he had paid for,

UNITED STATES DISTRICT COURT
For the Northern District of California

1  "a tussle ensued" between the two men.  *Id.*  The police were called, and their investigation led them

2  to confiscate the marijuana before Takeda ever possessed it.  *Id.*  Takeda admitted her guilt to the

3  police and helped them apprehend the drug dealer.  *Id.*  In October 1995, Takeda states she "pled

4  guilty to possession of approximately 36 grams of marijuana because I was told that was the way to

5  close the case, and I truly wanted it behind me."  *Id.*; *see also* CAR 215 ("my 1995 conviction cited

6  me, along with my two co-defendants, with possession of 36 grams, more or less, or

7  maruana/cannabis [*sic*] (see Court Judgment being submitted this day), my involvement was limited

8  to paying for approximately 5 grams, as I told the Court, under oath.").

9  **B.  Takeda's Return to the United States**

10      In 2001, Takeda applied for an F-1 visa that would allow her to live in the United States for two

11  and a half years while she studied English and Computer Graphics at Kapiolani Community College

12  in Honolulu, Hawaii.  *See* CAR 707.  The United States Department of State ("State Department")

13  found Takeda ineligible for an F-1 non-immigrant student visa on account of her conviction.  *Id.*

14  (citing the Immigration and Naturalization Act ("INA") § 212 (*codified at* 8 U.S.C.

15  § 1182(a)(2)(A)(i)(II)); Undisputed Fact 27, ECF No. 43 at 5; *see* 8 U.S.C. § 1182(a)(2)(A)(i)(II)

16  (conviction of a controlled substance offense renders an alien inadmissible).  As the chart in the

17  previous section sets forth,  the consular officer noted the details of Ms. Takeda's 1995 marijuana

18  conviction: she and her friends "bought 36 grams of Marijuana with 175,000 Yen (about 1,380 U.S.

19  Dollars) for personal use.  She paid 10,000 Yen (about $78 U.S. Dollars)[8] for that.  She was

20  sentenced to one year in prison which was suspended to three years on probation."  Undisputed Fact

21  27, ECF No. 43 at 5 (citing CAR 706-07).  On May 11, 2001, the District Director granted a waiver

22  of inadmissibility under 8 U.S.C. § 1182(d)(3)(A) and authorized a visa.[9]  *Id.;* CAR 706-07 (noting

23  that Takeda had studied high school in the U.S. for one year from August 1992 and stating "Post

24  recommends a waiver based on her sole offense occurred only out of curiosity, when she was 20

---

26      [8]  This presumably is the cost of the 5 grams.

27      [9]  This waiver provision permits the consular official, with the Attorney General's approval,

28  to grant a nonimmigrant visa to an applicant who is otherwise inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

years old and never thought of the consequences").

Takeda entered the United States on August 31, 2001 and studied in Hawaii that fall. *See* Complaint, ECF No. 10, ¶¶ 9-10. Marsh and Takeda re-established their relationship, and on December 31, 2001, Takeda moved to San Francisco to continue her studies and be with Marsh. *Id.* ¶ 11. Takeda went to Japan on January 29, 2003 to visit her parents, *id.* ¶ 12, and on April 10, 2003, Marsh and Takeda were married in Japan, Undisputed Fact 3, ECF No. 43 at 2.

**C. Marsh and Takeda's Attempts to Obtain an Immigration Visa for Takeda**

**1. Takeda's 2003 Visa Application**

On April 13, 2003, Marsh and Takeda applied for an immigration visa and Alien Registration at the United States Embassy in Tokyo (the "2003 Application"). *See* Complaint, ECF No. 10, ¶ 13; *see also* Answer, ECF No. 14, ¶ 13 (admitting the allegations in Paragraph 13 of the Complaint).[10] Marsh and Takeda sought an adjustment to Takeda's immigration status based on the fact that Takeda now was married to a U.S. citizen. *Id.* On June 3, 2003, following an interview at the Tokyo Embassy, Takeda's visa application was denied summarily based on her 1995 conviction. *Id.* Neither Takeda nor Marsh received a written response to the 2003 Application. *Id.* ¶ 13.

**2. Marsh and Takeda's 2005 Waiver Request**

On August 25, 2005, Marsh and Takeda applied for a waiver of inadmissibility by submitting an I-601 form to the DHS ("2005 Waiver Request"). *See* Complaint, ECF No. 10, ¶ 18; *see also* section 212(h) of the INA (codified at 8 U.S.C. § 1182(h)). In the application, they noted that the effect of the one-year sentence's invalidation after the successful completion of the three years' probation "according to Chushaku Keihou's *Commentary of Penal Code* [the most authoritative legal commentary in Japan], is explained as follows:

'The Article (27) stipulates the effect of the expiration of the period of suspension. Under the original Penal Code, the convicted offender was granted the waiving of the execution of punishment with the expiration of the period of suspension. But the amended Penal Code provides that the pronouncement of punishment per se becomes null and void, thus the expiration

---

[10] The court cites to the Complaint for facts in Part II. C. Unless the court indicates otherwise, DHS admits the allegations that the court cites. *See* Answer, ECF No. 14. In the interest of brevity, the court does not cite the correspondingly numbered paragraphs in DHS's Answer.

UNITED STATES DISTRICT COURT
For the Northern District of California

of the period of suspension has the effect of expungement of the criminal record.'[11]

Bacon Decl., ECF No. 25-1 at 13-14.

On October 27, 2005, the Immigrant Visa Branch Chief of the Consular Section at the American Embassy in Tokyo sent Marsh and Takeda a letter explaining that to complete the visa process, they must file an application for a waiver of inadmissibility and demonstrate that Takeda is otherwise eligible for an immigrant visa.[12]  *Id.*; CAR 207.  The letter states: "Your immigrant visa application on June 3, 2003 expired after one year of date of interview, and the supporting documents (i.e. Medical Examination, Police Certificate, etc.) on yor file as well."  CAR 207 (errors in original). Marsh alleges, and Defendant admits, that on January 31, 2008 "the Defendant Agency sent a denial of the first application for waiver claiming that it was denied due to the expiration of the I-130" and its supporting documents.  Complaint, ECF No. 10, ¶ 23;  Answer, ECF No. 14, ¶ 23.[13]

---

[11]  In Japanese (according to a translate function on google) "Chushaku Keihou" means "Penal Code Annotation."  *See* http://translate.google.com/#ja/en/%E6%B3%A8%E9%87%88%E5%88%91%E6%B3%95. Plaintiffs may have been referring to a book entitled "Chushaju Keiho: Sosoku" by Shigemitsu Dado.  In Japanese and in translation, it seems to be the authoritive legal commentary on the Japanese criminal code.  Section 14.03 on suspension states the following:

> If the period of suspension of enforcement runs its course without the pronouncement of suspension having been rescinded, the imposition of punishment loses its legal effect. . . . When the imposition of punishmen tloses its effect on this basis, it is as if no punishment ever had been imposed, and all of the usual consequences of imposition are extinguished.

http://books.google.com/books?id=gN0QgcW4Td0C&pg=PR21&dq=shigemitsu+dando&source=bl&ots=s72w6sII3_&sig=eUqhfreBEHkBWklvxo5DV1Y8c7go&hl=en&sa=Z&ei=hRFIUIPSMYKCqgGd34DYDQ&ved=0CC0Q6AEwAA#v=snippet&q=period%20of%20suspension&f=false.

[12] Plaintiff's Complaint suggests that the Immigrant Visa Branch Chief wrote the October 27, 2005 letter in response to the 2003 Application, not the 2005 Waiver Request.  *See* Complaint, ECF No. 10, ¶ 13 ("No written response or notice to the I-130 application was received until October 27, 2005 (almost three years after the applicant's submission) when the agency stated that Shiho Takeda would need a waiver.").

[13] The letter states that the 2005 Waiver Request "was not processed because Mrs. Takeda's visa application and supporting documents . . . filed in June 2003 have been expired by that time. Mrs. Takeda was advised that she should file an immigrant visa application anew if seeking waiver with I-601 application."  CAR 178.

UNITED STATES DISTRICT COURT
For the Northern District of California

### 3. 2007 Visa Application

On November 21, 2006, Marsh filed another I-130 Petition for Alien Relative with the United States Citizenship and Immigration Services, ("USCIS").  Undisputed Fact 4, ECF No. 43 at 2 (citing CAR 186).  USCIS approved Marsh's I-130 Petition in 2007.  Undisputed Fact 5.  On November 20, 2007, Takeda filed a DS-230 Application for Immigrant Visa and Alien Registration with the State Department (the "2007 Application").  Undisputed Fact 6.  In response to the question, "Have you ever been charged, arrested, or convicted of any offense or crime, Takeda marked "yes" and wrote "see attachment."  *Id.*  In the attachment, and as reflected in the chart above, she stated:

> In October, 1995 I was convicted of a crime in the Court of Japan . . . and that criminal record has been expunged so that a recent inquiry of the Court records reflects that my slate is clean, and no crime had been committed by me. . . . The crime was for possession with two others, of approximately 36 grams of marijuana, and I did plead guilty, but I fully explained to the Court that although I had agreed to purchase for use only 5 grams, along with two other people (one purchasing 5, and one purchasing the balance) I paid only the amount due for 5 grams.

*Id.* (citing CAR 185).  She also explained that "upon advice of my counsel in Japan, and with understanding that I would be sentenced to only a term of probation which when I successfully completed probation, it would be expunged, I pled guilty."  CAR 185.

On January 28, 2008, a State Department consular officer interviewed Takeda at the U.S. Embassy in Tokyo, Japan in connection with her Visa Application.  *Id.* at 3.  According to the consular officer, "[d]uring the visa interview, S.T. admitted that she was convicted in October 1995 in Hiroshima, Japan for a crime involving controlled substances violation. A court record was furnished."  *Id.*  The same day, a State Department consular officer at the American Embassy in Tokyo[14] refused to grant Takeda an immigrant visa, citing 8 U.S.C. § 1182(a)(2)(A)(i)(II), for admitting to a past drug conviction.  *Id.*

### 4. Marsh and Takeda's 2008 Waiver Request

---

[14] The Joint Statement of Undisputed Facts states that the Visa Branch, Consular Section of the American Embassy in Tokyo, is part of the State Department.  Joint Statement, ECF No. 43 at 3. In the pleadings, Plaintiff alleged and Defendant admitted, that a letter from the same Visa Branch was sent by "the Defendant Agency . . . ."  Complaint, ECF No. 10, ¶ 23; Answer, ECF No. 14, ¶ 23.

1    On May 1, 2008, Takeda and Marsh (acting as a petitioning relative) filed an I-601 Application

2    for Waiver of Grounds of Inadmissibility ("2008 Waiver Request") and numerous attachments with

3    the American Embassy in Tokyo, Japan.  *Id.; see* CAR 115-16 (waiver requests can be signed by a

4    "petitioning relative").  The attachments included statements regarding the circumstances

5    surrounding her 1995 conviction and her reformation.  *See* CAR 138-176.

6    For example, she explained that a dealer was selling 36 grams to her friend Mario, and she was

7    to pay for and receive 5 grams of that.  CAR 143.  Mario received the marijuana and complained

8    that it was short, and that is when the "tussle" described above happened, and the police came and

9    confiscated the marijuana before she actually received it.  *Id.*  She "pled guilty to possession of

10    approximately 36 grams of marijuana because I was told that was the way to close the case, and I

11    truly wanted it behind me.  I was aware that by pleading guilty I would face penalties." *Id.*  She also

12    stated that when she completed her probation, "the crime was expunged from my criminal record,

13    and I continue to lead a wholesome life."  *Id.*  As evidence that Takeda's conviction was expunged,

14    Marsh attached a certificate dated November 18, 2005 in Japanese with the words interspersed in the

15    Japanese of "Shiho Marsh" and "March 18, 1975" (her date of birth) and "United States of

16    America."  CAR 176.  Translations follow in English, French, German, and Spanish.  The English

17    translation is as follows:

18       This certificate, which has been issued by the appropriate police authorities of Japan, certifies
          that the person mentioned therein has no previous criminal records in Japan as of the date of its
19       issue.

20    *Id.* (listed as Ex. L-2 to the 2008 Waiver Request); *accord* Undisputed Fact 26, ECF No. 43.

21    On May 1, 2008, the State Department forwarded the 2008 Waiver Request, attachments, and

22    supporting documents to the USCIS Field Office in Bangkok, Thailand ("USCIS-Bangkok").

23    Undisputed Fact 14, ECF No. 43 at 3.  On August 22, 2008, USCIS-Bangkok "denied Marsh's I-601

24    waiver application."  *Id.* (citing CAR 105-112).  Citing 8 U.S.C. § 1182(a)(2)(A)(i)(II),  USCIS-

25    Bangkok found that Takeda was inadmissible because of her controlled substance conviction and

26    would be eligible for a waiver if she "show[ed] that the controlled substance . . . a single offense of

27    simple possession of 30 grams or less of marihuana."  CAR 102.  USCIS-Bangkok found that

28    Takeda had not shown 30 grams or less, relying on Takeda's admission that "she pled guilty to

1    possession of approximately 36 grams of marijuana, because you were told that was the way to close

2    the case, and you wanted it behind you."   *Id.*   USCIS-Bangkok also referenced the Judgment's

3    statement under "Summary of Facts Constituting the Offense" as "I quote the Facts Constituting the

4    Offense charged as they are written in the Indictment" and the Indictment's charge of 36 grams of

5    cannabis.   *Id.*

6    **5. The AAO Rejection of Marsh and Takeda's Appeal**

7         By a cover letter to the decision dated August 22, 2009, the District Director of USCIS-Bangkok

8    notified Takeda that she had 30 days from the date of the notice (33 days if notice was received by

9    mail) to appeal to the Administrative Appeals Office ("AAO") in Washington, D.C. on the

10   "enclosed Form I-290B."  CAR 105 (instructing her that the "Notice of Appeal should be executed

11   and filed with this office, together with the required fee" and that "a brief or other written statement"

12   could be submitted in support of the appeal with the Notice).  The AAO, also called the

13   Administrative Appeals Unit, is the appellate body which considers cases under the appellate

14   jurisdiction of DHS's Associate Commissioner, Examinations.  *See* 8 C.F.R. § 103.3(a)(iv).

15        The pages that follow immediately (CAR 106 to 108) are USCIS-Bangkok's denial of the 2008

16   Waiver request.  CAR 109 to 112 are "OMB No. 1615-0095, Expires 10/31/08, Form I-290B, Notice

17   of Appeal or Motion."  The top of the form reads, "Instructions," and it counsels to "[p]lease read

18   these instructions carefully to properly complete the form.  If you need more space to complete an

19   answer, use a separate sheet(s) of paper.  Write your name and Alien Registration Number (A-

20   Number), if any, at the top of each sheet. . . ."  CAR 109.  The sections that follow are specific

21   instructions to the appellant as follows:  (1) When Should I Use Form I-290B?; (2) Who May Not

22   File form 290-B; (3) General Instructions; (4) What is the Filing Fee?; (5) Where to File; (6)

23   Processing Information; (7) USCIS Forms and Information; (8) Penalties; (9) Privacy Act Notice;

24   and (10) Paperwork Instructions.  In short, this is an OMB form with instructions for someone filing

25   a Form I-290B.

26        The "Filing Fee" instruction (number 4 in the list above) says that the filing fee for Form I-290B

27   is a non-refundable $585.  CAR 110.  The instructions set forth the following:

28        Use the following instructions when you prepare your **check or** money order for the Form I-
         290B fee:

UNITED STATES DISTRICT COURT
For the Northern District of California

1.  The **check or** money order must be drawn on a bank or other financial institution located in the United States and must be payable in U.S. currency; and

2.  The **check or** money order payable to U.S. Department of Homeland Security, unless [instructions for different payee for applicants in Guam, the Virgin Islands] . . .

    C.    If you live outside the United States, Guam, or the U.S. Virgin Islands, contact the nearest U.S. consulate or embassy for instructions on the method of payment.

        *           *           *           *

Notice to Those Making Payments by Check.  If you send us a check, it will be converted into an electronic funds transfer (EFT). . . .

CAR 111.  In the three places bolded and underlined above, a hand-written black line is drawn through the words "check or" but not through "money order."  Undisputed Fact 17, ECF No. 43 at 4; *see* CAR 111.  The instructions then talk about how to check whether the fee is current.  *Id.* (notes that the fee is current as of the date of the form instructions, notes that fees change periodically, and gives website to check if fees have changed).

On September 19, 2008, Marsh's attorney sent the I-190B appeal and a check with the filing fee to USCIS-Bangkok.  Undisputed Fact 18, ECF No. 43 at 4.  On September 26, 2008, USCIS-Bangkok notified Marsh's counsel by fax that "the filing fee submitted (personal check) is not a negotiable item at this office."  *Id.*  The notification stated that the filing fee had to be paid either by U.S. Postal money order, U.S. Treasury Check, Cashier check issued by a U.S. bank, or through evidence that the fee was paid at a USCIS office located in the United States.  CAR 96.  The letter concluded: "Upon receipt of the proper monetary instrument, the record of proceeding will be forwarded to the Administrative Appeal Office."  *Id.*  The letter was signed by the District Director of USCIS-Bangkok.  *Id.*

On September 26, 2008, the same day USCIS-Bangkok faxed its letter, Marsh's counsel sent a postal money order to the Bangkok USCIS Field Office, via FedEx Global Express delivery, which was delivered to USCIS-Bangkok on September 29, 2008.  CAR 92.

On October 16, 2008, USCIS-Bangkok forwarded the I-190B appeal to the AAO.  *Id.*  USCIS-Bangkok attached a "Processing Sheet" to the front of the appellate record.  CAR 25.  The Processing Sheet asked several questions, including: "TIMELY APPEAL?" and "APPELLANT ENTITLED TO APPEAL?"  *Id.*  USCIS-Bangkok answered "Yes" to both questions.  *Id.*; *see* Joint

1    Statement, ECF No. 43 at 4.

2         On November 5, 2010, while the appeal was still pending with the AAO, Marsh submitted

3    additional evidence and supplemental briefing in support of his appeal.  *See* CAR 49-64 (saying he

4    mistakenly thought he submitted the brief earlier and made that mistake because the Form I-290B

5    was detailed).  CAR 49.  He asked the AAO to consider the enclosed brief based on new authority in

6    *Padilla v. Kentucky*, 559 U.S. __ (2010).  CAR 49 (under *Padilla*, Takeda was not informed of the

7    collateral immigration consequences of her conviction).  He also argued that the conviction was

8    expunged under Japanese law and that the Government thus had not met its burden of showing the

9    existence of a conviction.  CAR 52-52.  He argued that the government had to give credit to

10   expungements under first-time offender rules.  CAR 54 (citing BIA authority and *Dillingham v. INS*,

11   267 F.3d 996 (9th Cir. 2001)).  He also argued that Takeda's admission of the offense did not

12   establish any specific finding as to the amount of drug involved and concluded that the record was

13   insufficient to establish the validity of the conviction or the amount of marijuana.  CAR 55-56

14   (citing *Decision of USCIS AAO*, June 17, 2009 and attaching a copy).[15]  He noted that the statute

15   also had no minimum or maximum amount, and the indictment is only a charge.  CAR 56.

16        On April 7, 2011, the AAO "rejected Marsh's appeal as untimely."  Undisputed Fact 23, ECF

17   No. 43 at 4.  The AAO stated that the regulations required Marsh to file a complete appeal (with

18   filing fee) no later than 33 days after it was mailed from USCIS-Bangkok, which meant that the

19   appeal was due by September 24, 2008.  *See* CAR 87 (citing 8 C.F.R. § 103.3(a)(2)(I) (2007); 8

20   C.F.R. 103.5a(b) (1999)).  The appeal was not perfected, said the AAO, until the money order was

21   received, but that was on September 29, 2008, 38 days after the decision date.  *Id.*  The AAO noted

22   that "neither the Act nor the pertinent regulations grant the AAO authority to extend the 33-day time

23   limit for filing an appeal."  *Id.*  The AAO also explained that USCIS-Bangkok included filing

24   instructions with its August 22, 2008 decision, "having crossed out the word "check" under the

25   section entitled 'What Is the Filing Fee?' each time it appeared."  CAR 87.  The AAO did not

---

27        [15]  That decision is in the record at CAR 60-63 and discusses how a valid admission of a
     crime for immigration purposes requires that the alien be given a definition that includes all
28   elements of the crime.  CAR 62 (admitting use of a controlled substance is not admitting elements of
     crime).

UNITED STATES DISTRICT COURT
For the Northern District of California

address the other references to payment by check that USCIS-Bangkok did not cross out on the OMB Form Instructions.  It did not discuss whether crossing out the word "check" on a standard OMB instruction form was adequate notice that USCIS-Bangkok would not accept a check.  It did not address USCIS-Bangkok's check-the-box confirmation that the appeal was timely on its October 16, 2008 "Processing Sheet" that forwarded Marsh's I-190B appeal to the AAO.  *Cf.* CAR 25.

The AAO did decide that Marsha's appeal, while untimely, nonetheless met the requirements of a motion to reconsider, concluding that "a decision must be made on the merits of the case."  CAR 87.  It explained that a motion to reopen must state new facts to be proved and be supported by evidence.  *Id.* (citing 8 C.F.R. § 103.5(a)((2).  A motion to reconsider must establish that the decision was based on an incorrect application of the law or Service policy and also must establish that the decision was incorrect based on the evidence on the record at the time of the initial decision.  *Id.* (citing 8 C.F.R. § 103.5(a)(3)).  It noted that a motion that did not meet these requirements "shall be dismissed."  *Id,.* (citing 8 C.F.R. § 103.5(a)(4)).  But it concluded that the untimely appeal met the requirements of a motion to reconsideration because "[o]n appeal, counsel has submitted a brief and a copy of a June 17, 2009 decision issued by the AAO that, he contends, establish that the USCIS incorrectly found the applicant to have a controlled substance violation under the Act."  *Id.* It concluded that the District Director, as the official who made the last decision in the proceeding, must consider the untimely appeal as a motion to consider and render a new decision accordingly."  CAR 88-89.

On remand, and by decision dated August 2, 2011, USCIS-Bangkok  affirmed its August 22, 2008 denial of the Form I-601.  CAR 40-43.  It said that it would not consider the "additional new evidence" submitted on November 5, 2010 "because it was not submitted by the filing Form I-290B on September 29, 2008."  CAR 41.  It reiterated that the written judgment showed that Takeda's sentence was suspended, not that her conviction was expunged, and it did not address the November 2010 challenges to the conviction.  CAR 41-42.  It thus denied the motion to reconsider.  CAR 43.

## D.  **Marsh's Federal Lawsuit**

On July 29, 2011, Marsh filed this lawsuit, and he filed an amended complaint on October 16,

UNITED STATES DISTRICT COURT
For the Northern District of California

1   2011.  *See* ECF Nos. 1, 10.  He filed a motion for summary judgment and then an amended motion

2   after DHS produced the certified administrative record.  *See* ECF Nos. 20, 45.  His wife is not a

3   party.  DHS cross-moves for summary judgment.  ECF No. 31.

4          Marsh also moved for leave to amend his complaint to add the Department of State as a party.

5   ECF No. 47.  DHS opposed it.  ECF No. 50.

### III.  LEGAL STANDARDS

**A.  <u>Summary Judgment</u>**

8          Summary judgment is proper if the pleadings, the discovery and disclosures on file, and

9   affidavits show that there is no genuine issue as to any material fact and the moving party is entitled

10  to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S.

11  242, 247-48 (1986).  Material facts are those that may affect the outcome of the case.  *See id.* at 248.

12  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to

13  return a verdict for the non-moving party.  *See id.* at 248-49.

14         The party moving for summary judgment has the initial burden of identifying those portions of

15  the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a

16  genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "In

17  considering a motion for summary judgment, the court may not weight the evidence or make

18  credibility determinations, and is required to draw all inferences in a light most favorable to the non-

19  moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

20         When the nonmoving party has the burden of proof at trial, the moving party need point out only

21  "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the

22  moving party meets this initial burden, the non-moving party must go beyond the pleadings and – by

23  its own affidavits or discovery – set forth specific facts showing a genuine issue for trial.  *See* Fed.

24  R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

25  U.S. 574, 586-87 (1986).  Thus, summary judgment is proper against a non-moving party who "fails

26  to make a showing sufficient to establish the existence of an element essential to that party's case,

27  and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  If the non-

28  moving party does not produce evidence to show a genuine issue of material fact, the moving party

1   is entitled to summary judgment. *See id..* at 323.  The mere existence of a "scintilla" of evidence in

2   support of the non-moving party's position is not sufficient.  The non-moving party has the burden

3   of establishing sufficient evidence on each element of his case so that the finder of fact could return

4   a verdict for him. *Anderson*, 477 U.S. at 249.  To meet this burden, the nonmoving party must come

5   forward with admissible evidence.  Fed. R. Civ. P.56(e).

6   **B. Inadmissibility and Waiver Under the INA**

7        Section 212 of the INA (codified at 8 U.S.C. § 1182) provides that aliens who have committed

8   certain crimes are inadmissible to the United States:

9        (2) Criminal and related grounds

10            (A) Conviction of Certain Crimes

11                  (i) In general - Except as provided in clause (ii), any alien convicted of, or who
                    admits having committed, or who admits committing acts which constitute the
12                  essential elements of–

13                        (I) a crime involving moral turpitude (other than a purely political offense
                        or an attempt or conspiracy to commit such a crime), or

14
                        (II) a violation of (or a conspiracy or attempt to violate) any law or
15                      regulation of a State, the United States or a foreign country relating to a
                        controlled substance . . . is inadmissible.
16

17   8 U.S.C. § 1182(a)(2).  Section 212 also permits the government to waive a finding of

18   inadmissibility in certain cases.  The pertinent subsection states:

19        (h) Waiver of subsection (a)(2)(A)(i)(I), (II), (B), (D), and (E) - The Attorney General may,
          in his discretion, waive the application of subparagraphs (a)(2)(A)(i)(I), (II), (B), (D), and (E)
20        of subsection (a)(2) of this section and subparagraph of (A)(i)(II) of such subsection insofar
          as it relates to a single offense of simple possession of 30 grams or less of marijuana if–
21        . . .

22            (1)(B) in the case of an immigrant who is the spouse . . . of a citizen of the United States
              . . . it is established to the satisfaction of the Attorney General that the alien's denial of
23            admission would result in extreme hardship to the United States citizen or lawfully resident
              spouse . . . .
24

25   8 U.S.C. § 1182(h).  Section 1182(h) states that "[n]o court shall have jurisdiction to review a

26   decision of the Attorney General to grant or deny a waiver under this subsection."

27                                      **IV.  DISCUSSION**

28   Marsh challenges the determination that Takeda suffered a drug conviction (arguing that it was

1  expunged and invalid).  Alternatively, he challenges the failure to grant a waiver for a simple

2  marijuana possession of 30 grams or less (and the AAO's denial of his appeal as untimely).  He

3  argues that these decisions – and a delay of years in reaching them  – interfere with his

4  constitutionally-protected familial rights, and he asserts that the Administrative Procedures Act

5  (APA) is the mechanism that allows him to challenge the agency actions.  Summary Judgment

6  Motion, ECF No. 45 at 16, 18.

7      DHS responds that it did not decide whether a conviction barred a visa, the State Department

8  did, and the State Department's decision is not subject to review under 8 U.S.C. § 1104(a) and is in

9  any event correct because Takeda has a drug conviction.  Defendant's Opposition, ECF No. 31 at 2.

10  As to DHS's decision not to grant a waiver, it argues that its denial of a waiver is not subject to

11  judicial review either under 8 U.S.C. § 1182(h) and in any event was well-founded and not arbitrary

12  and capricious under the APA because the conviction was not expunged and was for 36 grams of

13  marijuana.  Defendant's Opposition, ECF No. 31at 2.

14      In response to DHS's argument about the State Department, Marsh maintains that DHS is the

15  right party but asks for leave to amend to add the State Department.  ECF No. 47 at 2.  DHS opposes

16  that amendment as futile.  ECF No. 50 at 3.

17      The problem with the administrative record here is that no decision maker has fully addressed

18  Marsh's and Takeda's main challenges to the conviction for marijuana possession.

19      The first challenge is whether Takeda's marijuana conviction was expunged under the first

20  offender standards in *Dillingham v. INS*, 267 F.3d 996 (9th Cir. 2001).  Put another way, is there a

21  conviction at all (and whose burden is it to show the existence of a valid conviction)?   The

22  administrative record establishes that the agency looked only at the face of the judgment and statute,

23  and there is no examination of the legal argument that the process reflected in the judgment and

24  statute operates as an expungement under specifically-cited Japanese law and in the context of a

25  public record showing that Takeda has no criminal record in Japan now.

26      Similarly, no agency decision maker addressed at least part of Marsha's and Takeda's second

27  main challenge: assuming that there is a conviction that is not expunged, does the record show a

28  valid conviction (given the lack of information about any advisement about elements of the offense,

1   the record about her admission in court to the drug quantity, and other factors including whether her

2   plea was with the assistance of counsel and whether it was involuntary because it was induced by the

3   representation by her lawyer that the conviction would be expunged). *See* CAR 224, 185. Even

4   assuming a valid conviction, Marsh raises questions about whether Takeda's specific admissions

5   about the quantity involved (36 grams versus 30 grams or less) render her eligible for a waiver.

6          Thus, section A summarizes how these challenges were raised and addressed (or not) by the

7   agency.

8          The next issue is that the AAO did not consider these arguments because it construed the appeal

9   as untimely based its determination that the appeal was not perfected until the money order was

10  received, which was after the appeals period expired.  Thus, despite the timely receipt of an appeal

11  and check, it denied the appeal as untimely.  CAR 87.  In section B, the court considers its authority

12  under the APA to disagree with the AAO's determination that the appeal was untimely.  The court

13  concludes that under the particular circumstances of this case and in the context of the administrative

14  record, a hand-written modification of a standard OMB instruction form to limit available forms of

15  payment did not render untimely an otherwise timely-filed appeal with payment that complied with

16  the form instructions.  The court has jurisdiction under the APA to make that call, and thus it

17  remands to the AAO to consider Marsh's claims on the merits.

18  **A.  Marsh's Challenges to Drug Conviction (and Agency's Analysis of Them)**

19         The  challenges are (1)  whether there is an "expungement" such that there is no conviction at

20  all, (2)  assuming there is no expungement, whether there is a valid conviction still, and (3)

21  assuming a conviction, whether Takeda's plea was to 36 grams (or 30 grams or less).  The court

22  spent time summarizing the administrative record (above) and here addresses the record in the

23  context of the legal challenges that were raised but not necessarily addressed fully in the

24  administrative proceedings.  The court does this to give legal context to what will be at issue in the

25  remand to the AAO that the court orders in section B.

26

27      **1.  The "Expungement"**

28         The judgment itself (set forth on page 3) reflects a sentence of "one year's imprisonment" and

1    "execution of said punishment shall be suspended for three years from the date this judgment

2    becomes final."  CAR 224.  The statute (set forth above on page 4, note 6) allows this process.  It is

3    a familiar sentencing concept (mostly in state court) in the U.S. penal system: prison sentences are

4    suspended, and a period of supervision (usually probation) is substituted.  If a person completes

5    probation successfully, then there is no prison sentence.  Put another way, the prison sentence is

6    suspended to allow the offender to complete probation and avoid prison.

7        The administrative record reflects that the agency considered the Japanese statute to be just that:

8    a mechanism that allows an offender to avoid prison.  *See, e.g.,* CAR 201 (2001 State Department

9    notes conviction as "one year prison suspended which was suspended to three years on probation");

10   CAR 185 (January 28, 2008 denial of visa by consular officer); CAR 41-42 (USCIS-Bangkok

11   observes that the written judgment shows only that the sentence was suspended, not that the

12   conviction was expunged).

13       Standing alone, this analysis of the conviction documents in the context of the Japanese statute

14   makes perfect sense.  The process describes a familiar alternative to a prison sentence: successful

15   probation means no jail.[16]

16       But Plaintiff's argument about expungement was not just about the face of the statute.  It was

17   that the conviction – as a matter of Japanese law – is expunged.  Plaintiff has raised this argument

18   since the State Department's initial denial of Takeda's request for a visa in 2003.  *See supra* page 7.

19   In support of their 2005 application for a waiver, Marsh and Takeda argued that under Japanese law,

20   the effect of the one-year sentence's invalidation after the successful completion of three years'

21   probation is "the expungement of the criminal record."  *See supra* p. 7 and Bacon Decl., ECF No.

22   25-1 at 13-14 (citing "Chusaku Keiho's *Commentary of Penal Code* [the most authoritative legal

23   commentary in Japan]"); *see* Undisputed Fact 6, ECF No. 43 at 2, and CAR 185 (in 2007 visa

24   application, said that a recent inquiry of court records show that record is expunged); CAR 185 (in

25   2007 application, Takeda stated that "upon advice of my counsel in Japan, and with understanding

26

27       [16]  The court disagrees with Plaintiff's counsel's contrast of the Japanese statute to 18 U.S.C.
    § 3607.  Section 3607 provides for "prejudgment probation" after entry of plea and no entry of
28   judgment (meaning, no conviction) after an offender completes prejudgment probation successfully.
    The Japanese statute on its face does not so obviously show that it is an expungement statute.

1    that I would be sentenced only to a term of probation which when I successfully completed

2    probation, it would be expunged, I pled guilty"); CAR 143 (in 2008 waiver request, explained that

3    her crime was expunged from her criminal record when she pleaded guilty); *cf.* Plaintiff's Motion

4    for Summary Judgment, ECF No. 45 at 9-10, and Bacon Decl., ECF No. 25 at ¶ 11 (explaining how

5    counsel obtained legal opinions regarding Japanese law from Yukihiro Masaki, an attorney in

6    Osaka, Japan, revealing that there were no longer any criminal records for Shiho Takeda because her

7    criminal record is expunged).

8        In support of this argument, Plaintiff cited not only the Penal Code commentary but also the

9    certificate dated November 18, 2005 from Japanese authorities showing that she had no criminal

10   history.  *See supra* p. 10 and CAR 176 (describing format of certificate, the translations in English,

11   French, German, and Spanish, and the representation that it was issued by the appropriate police

12   authorities of Japan).

13       No agency official addressed these legal arguments and instead – as the court said before –

14   analyzed whether expungement was shown on the face of the judgment, indictment, and statute.

15   That is not a sufficient analysis.  The court makes several points to illustrate this.

16       One, this issue matters.  The parties agree that under *Dillingham v. INS*, 267 F.3d 996 (9th Cir.

17   2001)), the government gives credit to expungements under first-offender laws like the one that may

18   exist here.  *See* Defendant's Opposition, ECF No. 132 at 16; CAR 54 (Plaintiff's 11/5/10 brief to the

19   AAO citing BIA authority for the same proposition).

20       Two, DHS says only that "expungement does not apply here because ST did not provide any

21   [sufficient] evidence that she got her conviction expunged."  Defendant's Opposition, ECF No. 32 at

22   23 (citing – without pin cite or analysis – *Lujan v. INS*, 222 F.3d 222, 728 (9th Cir. 2000), for the

23   sufficiency-of-the-evidence point ).[17]  In the Joint Statement of Undisputed Facts, it also says that

24   "there is no evidence in the record that this is an accurate, true, or complete translation."  ECF No.

25   43 at 5 n.2.

26       This is a fact question that can be answered.  DHS suggests that it is not its job to answer it.  It

27

28       [17]  The court read *Lujan*, and that case is about the effect of state first-offender expungements
and does not say anything about what evidence of that expungement is sufficient.

UNITED STATES DISTRICT COURT
For the Northern District of California

does this by saying that it is the State Department that – by denying the visa – decided whether there was a conviction.  It points to "the possibility of limited [State Department] intra-agency review" of any given decision" under 22 C.F.R. § 42.82 (c)--e).  Defendant's Opposition, ECF No. 32 at 13.  But the administrative record here does not give the court insight into what remedies might or might not exist with the State Department.  The State Department is not even at the table, and DHS – by opposing a motion to amend to add it – tries to prevent what illumination the State Department might add.  Whether or not DHS is right that the consular decision is unreviewable, the State Department could provide a record to show that is true.

Also, OIL's fact challenges to the sufficiency of the police record is not the kind of argument that on its face gives the court much confidence that the document is not authentic or sufficient.  The court is not making this finding – and it is the AAO that can consider the sufficiency of the evidence on remand – but it looks a lot like the documents that prosecutors receive routinely through Mutual Legal Assistance Treaty (MLAT) requests through the Department of Justice's Office of International Affairs (OIA).  The court observes that by the small expenditure of effort of an MLAT request through OIA's auspices to Japan, a Department attorney can confirm whether or not a record of conviction exists.  Presumably the AAO has mechanisms to do that too.

Third, though its argument is not particularly specific, DHS seems to argue that Plaintiff did not provide sufficient evidence of expungement (thus suggesting that it is Plaintiff's burden to show lack of a conviction or at least expungement).  Plaintiff argues that it is DHS's burden to show a valid conviction.  The parties provide no guidance other than their high-level arguments without any citation to authority.  And if the AAO had considered the argument, then the court might have undertaken that analysis.  Because the court will remand to the AAO (as discussed in the next section), the court defers that inquiry in favor of the agency's first analysis of it.

The court reiterates, however, that it is the government that has easy access to channels to obtain the information.  Plaintiff's assertion is not a bald one: it is one that references what appear to be public records.  And it is not apparent to the court on this record that the AAO cannot address the issue.  If it cannot, presumably it could make findings and direct a mechanism of relief, particularly given that Marsh and Takeda have been trying to get a visa or a waiver since 2003.  The court also

UNITED STATES DISTRICT COURT
For the Northern District of California

observes that pursuing the issue with DHS was not irrational: after all, DHS previously gave Takeda a waiver in 2001 to enter the United States to study for three years, and she remained here until she went back to Japan in 2003 to visit her parents and marry Marsh. *See* CAR 706-07 (recommending waiver because "her sole offense occurred only out of curiosity, when she was 20 years old and never thought of the consequences").

In the end, this is an easy fact question. Either Takeda's conviction has been expunged or it has not, and either court records exist or they do not, and all of this can be ascertained as a matter of fact. Regardless of what this court can or should do with judicial review of an agency decision on that point (either State or DHS), the government agency process – for now – will provide a mechanism for addressing the fact issues. *See* Section B, *infra*.

### 2. Even If No Expungement, Does the Record Show a Valid Conviction?

A related issue is Plaintiff's argument that the record does not establish a valid conviction. First, Plaintiff argued that the record does not show that she understood the elements of what she was pleading to. *See* CAR 226 (the judgment, which is the only record of a proceeding with Takeda, does not contain any transcript of a colloquy). Second, she points to an administrative record that does not show a lawyer present at the entry of her plea. *See* CAR 226 (judgment; discussed *supra* on page 3; reflects the presence of only the judge, prosecutor, and Takeda). Third, she says that she pleaded guilty on advice of her lawyer with the understanding that the conviction would be expunged on successful completion of probation). CAR 185 (2007 visa application). Fourth, she says that she fully explained to the judge that she was purchasing only five grams. *See* Undisputed Fact 8, ECF No. 43; CAR 226 (judgment does not reflect any fact findings as to Takeda but it does reflect the judge's "quoting from the facts" from the indictment, which is a charge that reflects a charged quantity of 36 grams and is not evidence or a record).

Marsh raised these issues not only here but also in his November 5, 2010 brief to the AAO. *See* CAR 49-64 (summarized in detail *supra* on pages 12 and 13 and also arguing under new Supreme Court case law that Takeda did not understand the collateral immigration consequences of her guilty plea). In that brief, Marsh also cited and attached a June 17, 2009 AAO decision discussing how a valid admission of a crime for immigration purposes requires an advisement that includes the

UNITED STATES DISTRICT COURT
For the Northern District of California

1   elements of the offense.  CAR 55-56; *compare Brady v. United States*, 397 U.S. 742, 755 (1970)

2   (a plea of guilty entered by one fully aware of the direct consequences . . . must stand, unless

3   induced by threats (or promises to discontinue improper harassment), [or] misrepresentation

4   (including unfulfilled and unfulfillable promises).

5       Again on this record, no one considered the legal sufficiency of the record to establish the fact of

6   a conviction, including the arguments about the sufficiency of Takeda's admission about the

7   quantity of marijuana.  This court's reading of the record suggests that by construing the appeal as a

8   motion for reconsideration, the AAO tried to send it back to USCIS-Bangkok and the District

9   Director to consider the arguments.  *See supra* p. 14 (describing the AAO's characterization of the

10  appeal as a valid motion to reconsider).  The AAO specifically sent the motion to reconsider to the

11  Director to consider the November 2010 brief and the June 17, 2009 decision that Marsh's counsel

12  said "establish[ed] that the USCIS incorrectly found the applicant to have a controlled substance

13  violation under the Act."  CAR 88-89.  As discussed in the facts section, the June decision

14  emphasizes the importance of an advisement of elements of the offense (which is the due process

15  issue identified in *Brady* that is relevant to the validity of a conviction obtained by guilty plea, at

16  least in the United States).  But despite the AAO's direction, the Director did not consider that

17  information because it had not been submitted by the date of appeal of September 29, 2008.

18      On remand, the AAO will be able to address Marsh's challenges to the conviction.

19  **3.  How Admissions About Quantity Factor Into the Waiver Analysis**

20      A guilty plea to the charged offense, if it included only Takeda's admission to 5 grams of

21  marijuana, might mean that the conviction is still valid but that the court record establishes only an

22  admission to 5 grams.  Put another way, the indictment is only an allegation about what the drug

23  quantity is, not a fact.  What Takeda said in the administrative proceedings conceivably is only what

24  she thought the charge was.  The record is what happened in court and what Takeda admitted.  As

25  stated in the previous sections, it is a fact issue that can be answered by the same court records

26  necessary to determine whether there is an expungement or a valid conviction.  If the records do not

27  exist almost 20 years later, that is a data point too.  (The delay from 2003 to the present appears to

28  be the agency's delay, not Takeda's, as the summary above describes.)  But the factual record,

1    whatever it is, is relevant to the AAO's determination about whether to grant Takeda a waiver.  For

2    the same reasons stated in the previous sections, and based on the decision to remand set forth in the

3    next section, the AAO should consider this issue on remand.

4    **B.  AAO's Dismissal of Appeal As Untimely**

5        The next issue is, what is the mechanism to send the case back to the AAO.  The court does this

6    by concluding that the AAO's denial of the appeal as untimely was – in the particular context of this

7    administrative record and this case – "arbitrary and capricious" under the APA because the hand-

8    written modification of the standard OMB form instructions does not render untimely an otherwise

9    timely-filed appeal with a proper form of payment allowed by the OMB form instructions.

10        DHS argues that this court cannot review the denial of the appeal as untimely – or USCIS-

11    Bangkok's denial of the motion to reconsider on remand – because 8 U.S.C. § 11182(h) precludes

12    any judicial review.  Defendant's Opposition, ECF No. 32 at 17 (without citation to any decisions

13    involving 1182(h)).  Section 1182(h) provides that "[n]o court shall have jurisdiction to grant or

14    deny a waiver under this subsection."   Under the APA, however, the court may set aside agency

15    action about a failure to follow procedures that is arbitrary and capricious.  Defendant's Opposition,

16    ECF No. 32 at 17-18 (citing 5 U.S.C. § 706(2)(A)); *see, e.g., Abedelhamid v. Ilchert*, 774 F.2d 1447,

17    1450 (9th Cir. 1985) (reviewing agency procedures).  Also, the court may set agency decisions that

18    are "not in accordance with law."  Defendant's Opposition, ECF No. 32 at 17 (quoting 5 U.S.C. §

19    706(2)(A)).

20        Here, the court is not reviewing an agency decision committed to agency discretion by law.

21    Instead, the court is sending this back to the agency to review the merits of the claims because it

22    concludes that the AAO erred by denying the appeal as untimely.  The court sees no basis on this

23    record for that decision.  *See Judulang v. Holder*, 132 S. Ct. 476, 483-84 (2011) (court determines

24    whether agency decision was based upon consideration of the relevant factors or whether there has

25    been a clear error of judgment; "That task involves examining the reasons for agency decisions—or,

26    as the case may be, the absence of such reasons.")

27        As set forth above on pages 11 and 12,  the AAO based its rejection of the appeal on a hand-

28    marked modification of a standard OMB form I-290B Form instructions.  CAR 109-112.  They are

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

form instructions to any applicant about how to appeal. *Id.* It cannot be that someone's hand-marking on a copy of a standard OMB form that is publicly available (on the Internet even) can serve as a barrier to an appeal. "Check" and "money order" were both acceptable forms of payment on that standard form, and Marsh's lawyer sent a timely appeal with a check. If USCIS-Bangkok accepted only money orders, it should have done exactly what it did: send the check back, accept a money order in its stead, and treat the appeal as timely. Undisputed Facts 17-22, ECF No. 43 at 6. Only the AAO treated the appeal as untimely. USCIS-Bangkok did not. *See* CAR 26 (sent back check and not application; said that record would be forwarded to AAO upon receipt of preferred payment) and 25 (processing form after money order was received reflects that appeal was timely).

USCIS-Bangkok sent the appeal to the AAO on October 16, 2008 with that processing cover form reflecting a timely appeal. CAR 25. There the appeal languished for two and a half years until the AAO rejected it as untimely. Undisputed Fact 23. People relying on administrative processes are entitled to rely on standard forms, and a copy of that form with a hand-marking several pages in does not render an otherwise timely appeal (application and proper form of payment) untimely. *Compare* 8 C.F.R. § 103.2(a)(7)(i)-(ii) (2007) (referring to "the check or other financial instrument" used to pay the filing fee). That the AAO decided otherwise is an error that warrants this court to send the case back to the AAO for full consideration of the merits of the case (as summarized by the court in the previous sections and as fully reflected in the administrative record).

The parties talk back and forth about which decision is the final decision: the rejection of the appeal as untimely or the District Director's failure to consider the "motion for reconsideration." When the AAO denied Marsh's appeal as untimely, it construed it as meeting the requirements of a motion to reconsider, and it remanded the case to the USCIS-Bangkok District Director to made a decision "on the merits of the case." CAR 87 (appeal met the requirements of a motion to reconsider because "counsel submitted a [November 2010] brief and a copy of a June 17, 2009 decision issued by the AAO that, he contends, establish that the USCIS incorrectly found the applicant to have a controlled substance violation under the Act"). On remand, the Director would not consider the "new evidence" in the November 2010 brief because it had not been submitted by September 28, 2008 (the date of the appeal to the AAO).

1   This court surmises that the AAO remanded to give an opportunity to the Director to consider

2   the challenges to the conviction.  That did not happen.  (The court recognizes that the Director's

3   decision not to consider the November 2010 brief was in the context of a possibly confusing remand

4   by the AAO in the form of a motion to reconsider.)  Even if the Director's denial is the final

5   decision, the court's outcome is not different because the AAO's error created the situation.

6   **C.  Other Arguments**

7   Marsh raised constitutional challenges in his complaint that went mostly unaddressed in his

8   summary judgment motion.  The court recognizes that those challenges were a "hook" for him to

9   challenge agency action and maybe page limits drove argument.  Still, the court observes that the

10  summary judgment standards set forth above could allow summary judgment against a party who

11  bears the burden of proof at trial and makes no showing at summary judgment.  Nonetheless, those

12  challenges – and DHS's arguments and cross-motion – may change in the face of an administrative

13  record that will change following remand.  Accordingly, the court denies the motion and cross-

14  motion without prejudice.  Following remand, the parties should tether their arguments to legal

15  analysis.

16  **D.  Marsh's Motion to Amend the Complaint**

17  As the court explained previously on pages 20 and 21, the administrative record does not give

18  the court insight into the basis for the State Department's decision and whether there are APA

19  arguments that would allow judicial review of any decisions.  *Cf. Abedelhamid*, 774 F.2d at 1450.

20  As stated above on pages 20 and 21, the court's view is that under the circumstances of this case, the

21  State Department ought to make those arguments, not DHS.  Given that leave to amend is granted

22  liberally under Federal Rule of Civil Procedure 15(a), *see Eminence Capital, LLC v. Aspeon, Inc.*,

23  316 F.3d 1048, 1051 (9th Cir. 2003), the court will allow the amendment following remand.

                                    **V.  CONCLUSION**

24

25  The court remands to the AAO for further proceedings and retains jurisdiction.  The court stays

26  this action for 60 days from the date of this order to allow that process.  The court denies both

27  summary motions without prejudice.  The court grants Marsh leave to amend his complaint.

28  The court sets a case management conference on November 29, 2012, at 10:30 a.m. and directs

1   the parties to file a joint case management conference statement by November 15, 2012 that includes

2   a copy of the AAO's decision and the parties' scheduling proposals going forward.  The parties may

3   appear by telephone if that is more convenient but should notify the court.

4       This disposes of ECF Nos. 20, 31, and 46.

5       **IT IS SO ORDERED.**

6   DATED:  September 6, 2012

7                                                                LAUREL BEELER
                                                                 United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California